**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

PARNELL MAY                                                                    PLAINTIFF

v.                                          4:18CV00681-JM-JTK

PULASKI COUNTY REGIONAL DETENTION FACILITY, et al.            DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody, Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.    If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.    An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.    The copy will be furnished to the opposing party.      Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or

other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## I.    Introduction

Plaintiff Parnell May is a pretrial inmate incarcerated at the Pulaski County Detention Facility (Jail). He filed this pro se action pursuant to 42 U.S.C. § 1983, alleging unconstitutional conditions of confinement which resulted in denial of access to the courts, sexual harassment from other inmates, and threats from Jail officers. Defendants Jail, Pulaski County Sheriff's Office, Does, Brawley, Johnson, Briggs and Jackson were dismissed on January 8, 2019, for failure to state a claim upon which relief may be granted. (Doc. No. 26)

This matter is before the Court on remaining Defendant Holladay's Motion for Summary Judgment, Brief in support, and Statement of Facts (Doc. Nos. 55-57), to which Plaintiff responded (Doc. Nos. 58-59, 61-63).

## II.    Second Amended Complaint (Doc. No. 11)

Plaintiff alleged that he was improperly housed in administrative segregation in December 2016, pursuant to unlawful Jail policies, after he refused to take a tuberculosis test. He claimed that while in administrative segregation, another inmate sexually harassed him on two occasions, he was denied proper access to the law library and legal materials, and members of the Jail staff threatened him. He claimed Defendant Holladay is responsible for implementing improper policies

which resulted in those improper conditions and incidents.

## III.     Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).    "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)).    "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135.    Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

### A.     Official Capacity Liability

Defendant first asks the Court to dismiss Plaintiff's allegations against him in his official capacity, because Plaintiff cannot show that a constitutional violation occurred pursuant to an official custom, policy, or practice at the Jail, as set forth in Luckert v. Dodge County, 684 F.3d 808, 820 (8th Cir. 2012).    In support, Defendant presents copies of Jail policies concerning the Infection Control Program (Doc. No. 56-1, pp. 80-85), access to the law library (Id., pp. 86-88), and Housing Assignments and Classification (Doc. No. 56-2, pp. 5-22). According to those policies, an intake deputy is initially responsible for visually inspecting all persons admitted to the

3

Jail for noticeable signs of health care problems, and an intake classification caseworker re-interviews the inmate within seventy-two hours to make an initial classification and program recommendation to the classification board. (Doc. No. 56-2, pp. 5-6) The classification board meets weekly and reviews an inmate's classification and approves changes to that classification. (Id., p. 9) The policy also provides the inmate with the opportunity to appear in person to present his case to the board, and an appeal process. (Id., pp. 10-11) Inmates are classified into one of four levels, and level four inmates are classified as special needs inmates or administrative segregation (ad seg) inmates. (Id., pp. 14-21) Ad seg inmates are those who are classified as requiring ad seg due to a high escape risk, or those who pose a threat to the security and good order of the institution. (Id., pp. 19-20)

Pursuant to the Infection Control Program, all inmates booked into the Jail receive a screening and a tuberculin skin test. (Doc. No. 56-1, pp. 80-81) If an inmate refuses to take the tuberculin skin test, he/she is segregated from the general population until the test is taken. (Id., p. 2) When Plaintiff was booked into the Jail on December 4, 2016 on a charge of murder, he refused to take the tuberculin skin test. (Doc. No. 56-5, p. 2) He was then placed in administrative segregation, because the W Unit, which is limited to inmates with certain medical conditions, does not house inmates charged with murder. (Id.) Finally, according to Lesa Warner, Administrative Sergeant of the Jail, Defendant Sheriff Holladay had no personal knowledge of Plaintiff's classification or the other conditions he alleged in his Complaints. ((Doc. No. 56-1, pp. 1-2) The Chief of Detention of the Jail is responsible to the Sheriff for the overall operation of the Jail, and the duties of policy development, budget management, staff training and supervision and procuring equipment. (Id., p. 76)

The law library procedure provides for access to the law library and photocopying services

(Id., pp. 86-87), and inmates housed in special management units must request legal documents from inmate services, which then prints the requested documents and provides them to the inmates. (Id., p. 2)

In his Response, Plaintiff states that summary judgment is not appropriate because the Court ruled previously in the Order denying his summary judgment motion that a material dispute of fact exists. He states that he exercised his personal right to refuse the tuberculin test based on a spiritual belief, and was improperly placed in lockdown twenty-three hours a day where he was deprived of access to the law library and the opportunity to smoke on the yard. He claims the Jail does not have a written policy that states that inmates who refuse to take the tuberculin test should be housed in ad seg, and his placement there constitutes unconstitutional punishment of a pretrial detainee.

Since Plaintiff was a pretrial detainee at the time of his incarceration, the due process standard of the Fourteenth Amendment applies to determine the constitutionality of his conditions of confinement. "Under the Fourteenth Amendment, pretrial detainees are entitled to 'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment." Owens v. Scott County Jail, 328 F.3d 1026 (8th Cir. 2003) (quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)). "[I]nmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989).

Conditions which "deprive inmates of the minimal civilized measure of life's necessities," may be considered cruel and unusual, and therefore, unconstitutional. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). In determining when pretrial detention is considered unconstitutionally punitive, the courts apply the Eighth Amendment deliberate indifference standard, focusing on the

length of exposure to unsanitary conditions and the degree to which the conditions are unsanitary. Whitnack v. Douglas County, 16 F.3d 954, 957 (8th Cir. 1994). "Conditions of confinement, however, constitute cruel and unusual punishment 'only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.'" Id., (quoting Wilson v. Seiter, 501 U.S. 294, 304 (1991)).

In this case, the parties do not dispute that Plaintiff was placed in administrative segregation beginning on December 4, 2016 because he refused to take a tuberculin test.    Plaintiff claims that this "practice," which he also claims is not found in any official policy, is unconstitutional, and constitutes improper punishment of a pretrial detainee. However, although pretrial detainees cannot be punished for the crime for which they have been charged, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" Bell v. Wolfish, 441 U.S. 520, 535, 539 (1979).    The purpose of the Jail's infection control policy includes monitoring the incidence of infectious and communicable diseases among inmates, promoting a safe and healthy environment, and preventing the incidence and spread of the diseases. (Doc. No. 56-1, p. 80) Plaintiff alleges, however, that his placement in ad seg was punitive because he was locked down twenty-three hours a day and could not personally visit the law library or join other inmates on the yard for a smoke. He does not, however, allege that he was denied access to legal materials requested or that any denial resulted in an injury to his criminal proceedings. See Lewis v. Casey, 518 U.S. 343, 354 (1996). In addition, according to the court records of his state criminal case, Plaintiff was represented by counsel at many of the hearings and the trial, and personally filed numerous pro se motions. (Doc. No. 56-1, pp. 6-74) In addition, Plaintiff provides no facts to support a finding that his confinement produced the deprivation "of a single, identifiable human need...." Whitnack, 16 F.3d at 957. Therefore, the

Court finds that Plaintiff's placement in ad seg did not result in an unconstitutional access to the courts. And, Plaintiff provides no specific facts, information, or proof that his placement resulted in sexual harassment, and his claim that he lost the privilege of having a smoke on the yard does not support a finding of punishment or harm, or support his claim of an unconstitutional condition of confinement. Finally, verbal harassment, without more, does not support a constitutional claim for relief. King v. Olmsted County, 117 F.3d 1065, 1067 (8th Cir. 1997).

**B.    Individual Capacity**

With respect to Plaintiff's allegations against Defendant in his individual capacity, the Court finds that Plaintiff provides no evidence that Defendant Holladay was personally aware of any facts relating to his claims of unconstitutional conditions, or that he was personally involved in any decisions relating to Plaintiff's confinement. Supervisor liability is limited in § 1983 actions, and a supervisor cannot be held liable on a theory of respondeat superior for his or her employee's allegedly unconstitutional actions.   See White v. Holmes, 21 F.3d 277, 280 (8th Cir. 1994).   A supervisor incurs liability only when personally involved in the constitutional violation or when the corrective inaction constitutes deliberate indifference toward the violation. Choate v. Lockhart, 7 F.3d 1370, 1376 (8th Cir. 1993).   In particular, the plaintiff must show that the supervisor knew about the conduct and facilitated it, approved it, condone it, or turned a blind eye to it.   Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995).   See also Otey v. Marshall, 121 F.3d 1150, 1155 (8th Cir. 1997) ("Section 1983 liability cannot attach to a supervisor merely because a subordinate violated someone's constitutional rights.")

**IV.    Conclusion**

IT IS, THEREFORE, RECOMMENDED that Defendant's Motion for Summary Judgment (Doc. No. 55) be GRANTED, and Plaintiff's complaint be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 23rd day of August, 2019.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE